# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**PAUL LEONARD HALTHON**                                    **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO.: 1:08cv47-HSO-JMR**
                                                    **1:08cv48-HSO-JMR**
                                                    **1:08cv49-HSO-JMR**

**JACKSON COUNTY, MISSISSIPPI,**
**JAROME BARNES and KEN BROADUS**                          **DEFENDANTS**

---

### REPORT & RECOMMENDATIONS:

This matter is before the Court pursuant to a Motion [49-1] for Summary Judgment filed on behalf of the Defendants, Nurse Jarome Barnes, Director Ken Broadus, and Jackson County, Mississippi (collectively hereinafter "Defendants") on May 1, 2009. Defendants' Motion is accompanied by a Memorandum [50-1] in Support thereof. To date, Plaintiff has not filed a response in opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendants' Motion [49-1] for Summary Judgment be granted, and civil action numbers 1:08cv47-HSO-JMR, 1:08cv48-HSO-JMR, and 1:08cv49-HSO-JMR be dismissed with prejudice.

### STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action as well as *pro se* § 1983 actions 1:08cv48-HSO-JMR and 1:08cv49-HSO-JMR against the Defendants alleging that he suffered violations of his constitutional rights while being detained as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC"). On January 29, 2009, this Court determined that all three actions arose out of the same transactions or occurrences and involved the same or substantially similar

issues of law and fact, and thus, consolidated all three actions by Order [31-1] of this Court with Civil Action No. 1:08cv47-HSO-JMR constituting the Master Docket for these causes.

## FACTS:

Plaintiff was arrested in Jackson County on the charge of Burglary. On December 5, 2006, he was booked and detained at the JCADC to await trial on the pending charge. On February 15, 2008, Plaintiff filed his original Complaints against Ken Broadus, Unknown Ross, Jarome Barnes, and the JCADC. On April 22, 2008, Plaintiff filed the exact same Amended Complaint [11-1] in all three cause numbers. This Court by Order [12-1], on May 28, 2008, replaced Defendant JCADC with Jackson County, Mississippi. On January 29, 2009, all three actions were consolidated with Civil Action No. 1:08cv47-HSO-JMR to constitute the Master Docket for these actions. Plaintiff's claims against Defendant William S.R. Ross, M.D. were dismissed from this cause on March 2, 2009, by Court Order [35-1].

In his Complaints, Plaintiff alleges various problems that plague the JCADC, and contends that their cumulative effect violates his right to Due Process under the Fourteenth Amendment. The Court notes that the great majority of Plaintiff's pleadings are dedicated to challenging the conditions of his confinement at the JCADC. For instance, Plaintiff alleges that the jail is overcrowded with prisoners. Also, Plaintiff alleges that the JCADC is kept in deplorable condition due to the facility's failure to properly clean the premises. Plaintiff alleges that the zones were not cleaned and/or painted from Hurricane Katrina to March of 2008, and that black mold and mildew covered the walls.[1] Plaintiff claims the black mold and mildew gave him a feathery tickling in his throat causing him to cough-up little black specks and breathing problems. Plaintiff also complains of spiders and

---

[1]Hurricane Katrina was a category five hurricane that formed over the Bahamas and made its second landfall on August 29, 2005, along the Gulf Coast.

insects in the JCADC.

Plaintiff also alleges that the JCADC is operated in a manner such that it denies him due process. Plaintiff alleges that the facility is overcrowded, and this causes or contributes to numerous problems. For instance, Plaintiff alleges that he did not have a bed for a period, and therefore had to sleep on the floor. Plaintiff claims that one night he awoke and hit his head on a table that he was sleeping under and he now has migraine headaches. Also, Plaintiff alleges that his meals are in insufficient portions and sugar is no longer placed on the trays, and that inmates are only given a razor once a month instead of once a week. Also, Plaintiff generally alleges stress and strain from the overcrowding. Plaintiff also complains that the JCADC is kept at unbearably cold temperatures causing him to shiver and agitate his arthritic ailments. Plaintiff further alleges that nonviolent inmates are housed with violent inmates and mentally ill inmates are housed with non-mentally ill inmates. Also, Plaintiff contends that "yard call" or recreation periods are only given once every two weeks.

Lastly, Plaintiff makes allegations of various episodic acts and omissions by the JCADC staff. Plaintiff alleges that the JCADC medical staff, and specifically nurse Jarome Barnes, frequently ignore the inmates' "sick calls" and other medical requests. Plaintiff specifically notes that he was not provided a tuberculosis test upon being admitted to the JCADC. Also, Plaintiff alleges the medical care at the JCADC is inadequate. Plaintiff claims that in "the first part of 2007" he was given a shot for trauma to his left knee and a second shot one month later. Then at some point Plaintiff had a disagreement with nurse Barnes concerning whether or not Plaintiff would get another shot, which he did not. Plaintiff also alleges that his pain medication was taken away and is no longer administered to him. He further claims that nurse Barnes treats him unfairly by refusing to give him Tylenol while Tylenol is given to other inmates. Plaintiff also alleges that he has asked

for mental health treatment but has been refused.  Plaintiff further alleges that staph infections are spread throughout the JCADC and he contends that inmates are being charged for medical complaints due to the overcrowding.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment."  *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987).  "The requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'"  *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion.  *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986).  To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party must bring forth significant

probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can

be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79.

The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaints allege both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

**I. Conditions of Confinement:**

Plaintiff alleges that the Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the JCADC. The Court notes that Plaintiff's official capacity claims against the Defendants are, in reality, claims against the office in which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against the Defendants in their official capacities, he must establish a constitutional

violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

The great majority of Plaintiff's Amended Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the JCADC. However, other than the previously noted allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the JCADC was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claims against the Defendants. Accordingly, the Defendants are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the JCADC.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendant Broadus in his individual capacity for the allegedly unconstitutional conditions at the JCADC. However, because Defendant Broadus is a law enforcement official, he may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendant Broadus, Plaintiff must offer proof that the

conditions at the JCADC were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the JCADC facilities do not rise to the level of constitutional violations. Plaintiff alleges that the walls of the JCADC were covered in black mold and mildew. Also, Plaintiff claims that the zones were not cleaned after Hurricane Katrina until March of 2008. Despite these allegations, the Court notes that Plaintiff offers no evidence that the Defendants maintain the facility in this manner as a form of punishment. Furthermore, the evidence is clear that the Defendants try to maintain the JCADC in a serviceable condition. Officers take a clean up cart three times a week to each zone and spray down the rooms and cells with bleach. (*See* Ex. "C" Attach. Defs.' Mot. [49-3] Summ. J.) Trustees use comet and paper towels to clean the areas. *Id.* Also, the inmates, including the Plaintiff, are given a mop, bucket, broom, dust pan, toilet brush, shower brush, garbage bag, and soap to do any further cleaning they see fit. *Id.* Furthermore, the trash is picked-up every night. *Id.* Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff alleges that inmates are unreasonably denied an opportunity to exercise in the form of "yard calls," although, Plaintiff makes no specific allegations as to him ever being denied recreation. He claims that inmates are only given yard call once every two weeks. (*See* Pl.'s Am. [11-1] Compl.) However, the Court finds that Plaintiff's contentions are not supported by the available evidence. The Defendants assert that recreation is provided as staffing and weather

permits. (*See* Ex. "F" Attach. Defs.' Mot. [49-3] Summ. J.)  The Court notes that Plaintiff has presented no direct evidence to indicate that he was ever denied a recreation period as a form of punishment.   Furthermore, Plaintiff has presented no evidence to establish that the alleged infrequency of yard calls was not reasonably related to a legitimate penalogical interest such as assuring inmate security.  This issue does not rise to an actionable claim.

Plaintiff's allegations concerning the quantity and quality of the food served at the JCADC also fail to state a constitutional claim.  Plaintiff's primary complaints are that the food is regularly served with too little sugar and the serving portions are too small.   However, Plaintiff has offered no evidence or even made an allegation that the food at the JCADC is served in the alleged manner as a form of punishment.   Furthermore, all available evidence indicates that the caloric value of the food served is well within the American Correctional Association guidelines.  (*See* Exs. "D," "E" Attach. Defs.' Mot. [49-3] Summ. J.)  The Plaintiff has failed to establish a violation of a clearly recognized constitutional right.

Plaintiff further alleges that the JCADC is overcrowded.   At the outset, the Court notes that, absent some indication of punitive intent, the mere overcrowding of a jail does not  violate the Fourteenth Amendment.  *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 WL 53269, *2 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 WL 3334091, *5 (N.D.Miss. 2008).   Plaintiff makes no direct allegations that Defendant Broadus intentionally operated the JCADC in an overcrowded condition as a form of punishment. While the Defendants concede that the JCADC is operated on occasion above preferred capacity, they argue that a new building has been constructed in order to remedy this problem and others are currently in the planning stages.  The Court finds that Plaintiff has failed to establish that the overcrowding at the JCADC is not reasonably related to a legitimate governmental interest such as balancing an

overwhelming number of detainees with a finite amount of available housing.

Plaintiff additionally contends that the overcrowding causes or significantly contributes to a myriad of problems for the incarcerated inmates. For instance, Plaintiff alleges that inmates are housed together without concern for classification and that inmates are forced to sleep on mats on the floor. However, the Court notes that Plaintiff has made no allegations or offered any evidence that Defendant Broadus is capable of operating the JCADC in a different manner, but chooses not to as a form of punishment. The Court further finds that Plaintiff's specific allegations do not rise to the level of constitutional violations. First, inmates have no recognizable due process interest in custodial classifications. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998). Additionally, pretrial detainees do not have a constitutional right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir. 1986). Such conclusory allegations are insufficient to survive a motion for summary judgment. These issues do not rise to an actionable claim.

Plaintiff also makes allegations concerning the alleged deprivation of necessary personal hygiene items, specifically, a razor. Plaintiff alleges that county-issued razors are only passed out to inmates with no funds once every month. Plaintiff has failed to allege that he was deprived a razor for the purpose of punishment, and has presented no evidence to suggest that the deprivation was not reasonably related to a legitimate governmental interest, detention center security. Furthermore, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). This issue does not rise to an actionable claim.

Also, Plaintiff alleges that the air conditioning units at the JCADC were kept so cold that his "arthritic ailment was agitated to the point of aching all over his body with a shivering cold." (*See*

Am. [11-1] Compl.)  However, Plaintiff never once sent in a grievance or request form complaining about the temperature at the JCADC. (*See* Exs. "A-5," "A-6" Attach. Defs.' Mot. [49-2] Summ. J.) Also, a look at Plaintiff's sick call requests reveals that Plaintiff never linked any of his arthritis complaints to the temperature at the JCADC.  Furthermore, Plaintiff has failed to assert that the alleged cold temperature at the JCADC was for the purpose of punishment.  Again, as noted previously, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned."  *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).  The Plaintiff has failed to establish a violation of a clearly recognized constitutional right.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement at the JCADC, the Court finds that  Defendant Broadus is entitled to qualified immunity as to Plaintiff's individual capacity claims.  Plaintiff has failed to provide any direct evidence that Defendant Broadus imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest.  Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II.  Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the JCADC, Plaintiff also alleges that the Defendants are liable in both their official and individual capacity for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

Denial of Adequate Medical Treatment:

Plaintiff complains that his "regular pain" medications were taken away, that he was denied mental health treatment and treatment for a mouth infection, that staph infections were going around the JCADC, and that he should have received monthly shots for pain in his left knee.  Plaintiff's

official capacity claims against the Defendants are, in reality, claims against the office which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against the Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that the Defendants failed to provide him with proper medical care. Specifically, Plaintiff argues that he made numerous requests for mental health treatment and treatment for a mouth infection which went unanswered. Also, Plaintiff claims that a staph infection was going around the JCADC. Furthermore, Plaintiff complains about his medications being taken away for abuse, and he disagrees with the course of treatment that Defendant Barnes used in regards to pain in his knee. However, other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims against the Defendants.

Plaintiff's Complaint also seeks liability against the Defendants in their individual capacities. In response, the Defendants have plead the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a

violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs,* 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, medical records or medications, diagnosis, and sick calls may rebut an inmate's allegation of deliberate indifference. *Id.*

Defendants contend, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that the Defendants were deliberately indifferent to his serious medical needs. The essence of Plaintiff's denial of medical treatment claims is his accusation that his medications have been taken away from him unjustly. (*See* Pl.'s Compls., *see also* Am. [11-1] Compl.) Defendants

contend that some of Plaintiff's medicines were taken away because he was selling/trading his medications and attempting to buy, or trade for, other inmates' medications. (*See* Ex. "A-5" Attach. Defs.' Mot. [49-2] Summ. J.)   Defendants note that inmates wrote to Defendant Broadus complaining about Plaintiff trading and selling his medications. *Id.*   Also, Plaintiff's inmate file indicates that in early October 2007, Plaintiff was caught selling his pain medications. (*See* Exs. "A-5," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.)  Plaintiff has not presented any evidence that the Defendants knew of and/or disregarded an excessive risk to his health or safety.  Plaintiff's medical file and medical records indicate that Plaintiff received medical care commensurate with his needs. (*See* Exs. "A-6," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.)  Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

Plaintiff complains that "staph infections have been going around the JCADC for the past several years," however, Plaintiff does not allege that he obtained a staph infection nor is there any evidence in the records that he contracted a staph infection. (*See* Pl.'s Am. [11-1] Compl.)  Additionally, Plaintiff does not allege that he was denied treatment for a staph infection.  To the extent that Plaintiff seeks to bring this claim for other inmates, the Court notes that Plaintiff has no standing to assert the claims of these individuals. *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). This Court finds Plaintiff's claim to be frivolous and unworthy of further discussion.

Plaintiff disagrees with Defendant Barnes' medical assessment and treatment regarding a shot to his knee. (*See* Pl.'s Am. [11-1] Compl.)  Plaintiff asserts that, at some point prior to being incarcerated at the JCADC, he suffered trauma to his left knee which causes him constant pain. Plaintiff alludes this trauma is from being hit by a truck in Detroit.  However, Plaintiff visited the Singing River Emergency Room on August 19, 2006, less than four months before being incarcerated at the JCADC, for left ear pain and for a car running over his right foot three days prior.

(*See* Ex. "A-7" Attach. Defs. Mot. [52-1] Summ. J. 2.)  The ER report notes that the rest of Plaintiff's systems were checked and showed negative for trauma to any other extremities, and Plaintiff's past medical history was noted as healthy. *Id.*  Regardless, Plaintiff claims that in "the first part of 2007," while at the JCADC, he was given a shot for trauma to his left knee and a second shot one month later.  Then at some point Plaintiff had a disagreement with Defendant Barnes concerning whether or not Plaintiff would get another shot in his knee.  Defendant Barnes informed Plaintiff that he would not be getting another shot, however, Plaintiff believed that he should get the shot every month.  Disagreement regarding the type of medical treatment does not constitute a constitutional deprivation. *Norman*, 122 F.3d at 292 (5th Cir. 1997).  Furthermore, Plaintiff has not shown how Defendant Barnes acted with deliberate indifference to a serious medical need.  This Court finds that this issue does not rise to an actionable claim.

Also, Plaintiff alleges that he was denied mental health treatment and treatment for a mouth infection.  The Defendants acknowledge that there is not a mental health therapist on staff at the JCADC.  As to Plaintiff's mouth infection claim, however, Defendants contend that Plaintiff's mouth infection was a simple mouth ulcer that was treated. (*See* Exs. "A-5," "A-6," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.)  Defendant Barnes noted on one of Plaintiff's last sick call requests on May 28, 2008, that "no infection noted [in plaintiff's mouth]... many complaints of this every couple of weeks, [but] no sign of infect[ion] noted." (*See* Ex. "A-6" Attach. Defs. Mot. [49-2] Summ. J. 32.)  Plaintiff sent in several sick call requests asking to be taken to the Singing River Mental Hospital, however, he has not presented any evidence that he actually had a serious health need - mental or otherwise - that was being ignored, or that the Defendants believed that he had a serious health need.  Furthermore, there is no evidence that any alleged inaction of the Defendants caused Plaintiff an unnecessary and wanton infliction of pain.  Also, the evidence shows that,

throughout his stay at the JCADC, Plaintiff received more than reasonable care at the facility and was consistently seen by a health care official. (*See* Exs. "A-6," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.)   Therefore, Plaintiff has failed to establish that the Defendants acted with deliberate indifference to his alleged mental health needs or any health needs.

Plaintiff also asserts that he was not administered a tuberculosis test upon his entry into the JCADC, and complains of not being tested for formaldehyde poisoning since he lived in a Federal Emergency Management Agency trailer before entering the JCADC.  Defendants  claims that there is no evidence of a tuberculosis outbreak or formaldehyde poisoning at the JCADC.  Furthermore, the evidence shows that Plaintiff was given a tuberculosis screening on June 26, 2007. (*See* Ex. "A-7" Attach. [52-1] Defs.' Mot. Summ. J.)  The Court is unaware of any constitutional right to be tested for tuberculosis or formaldehyde poisoning, and therefore finds Plaintiff's claims to be frivolous and unworthy of further discussion.

Additionally, Plaintiff makes an allegation that inmates are charged for medical complaints.  However, beyond this assertion, Plaintiff presents no evidence to support his claim.   In fact, Plaintiff's medical file shows over eighteen (18) sick call requests, all of which were responded to. (*See* Exs. "A-6," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.)  Furthermore, not one grievance form has been presented that shows Plaintiff ever complained of being charged for medical requests. (*See* "A-5" Attach. Defs.' Mot. [49-2] Summ. J.)   As stated earlier, the evidence shows that, throughout his stay at the JCADC, Plaintiff received more than reasonable care at the facility and was consistently seen by a health care official. (*See* Exs. "A-6," "A-7" Attach. Defs.' Mot. [49-2, 52-1] Summ. J.) This Court finds Plaintiff's claims to be frivolous and unworthy of further discussion.

In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the

part of the Defendants. Thus, the Court finds that the Defendants are entitled to qualified immunity.[3]

Although he has not presented any evidence that he suffered any physical injuries while incarcerated at the JCADC, Plaintiff contends that his experiences at the JCADC caused him to suffer mental anguish, stress, and strain. (*See* Pl.'s Am. [11-1] Compl.) However, pursuant to the Prison Litigation Reform Act, "no federal civil action may be brought by a prisoner... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). If a prisoner cannot provide evidence of a physical injury, the PLRA bars recovery for mental and emotional damages. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, the "injury must be more than *de minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). As noted above, Plaintiff has not presented any evidence that he suffered a physical injury and thus he is barred by the PLRA from seeking psychological damages. Accordingly, the Court finds that Plaintiff has failed to establish that he suffered a violation of any cognizable constitutional right while incarcerated at the JCADC.

## CONCLUSION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC. Plaintiff has presented no evidence indicating that

---

[3] The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-11, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

the alleged conditions of confinement were imposed by Defendants for a punitive purpose.  Further, Plaintiff's allegations that he was denied adequate medical care do not rise to the level of constitutional violations.  Accordingly, the Court recommends that summary judgment be granted in Defendants favor, and Plaintiff's official and individual capacity claims be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

**SO ORDERED** this the ___13th___ day of October, 2009.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE